# Illinois Official Reports

## Appellate Court

---

### *In re C.P.*, 2018 IL App (4th) 180310

---

| | |
|---|---|
| Appellate Court Caption | *In re* C.P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Davucci C., Respondent-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-18-0310 |
| Filed | September 21, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 18-JA-6; the Hon. John R. Kennedy, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | John B. Hensley, of Hensley Law Office, of Champaign, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and James C. Majors, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justice Cavanagh concurred in the judgment and opinion.<br>Justice Holder White specially concurred, with opinion. |

**OPINION**

¶ 1 Davucci C., respondent, is the father of C.P. (born November 4, 2017). In April 2018, the trial court found C.P. to be a ward of the court and vested guardianship of him in the Department of Children and Family Services (DCFS).

¶ 2 Respondent appeals, arguing the trial court lacked jurisdiction to enter the dispositional order because respondent is also a minor and the State failed to serve his parents in accordance with section 2-15 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-15 (West 2016)). We disagree and affirm.

¶ 3                                    I. BACKGROUND
¶ 4                A. The Petition for Adjudication of Wardship and Pretrial Hearing
¶ 5 In January 2018, the State filed a petition for adjudication of wardship, alleging C.P. was neglected because of his mother's mental illness. At the time the petition was filed, respondent was named as the putative father. Throughout these proceedings, respondent was incarcerated in the Illinois Department of Juvenile Justice.

¶ 6 Later in January 2018, the trial court conducted an admonition hearing at which respondent appeared and requested court-appointed counsel. The court appointed the public defender to represent respondent.

¶ 7 In February 2018, the trial court conducted a pretrial hearing. Respondent appeared in person and with counsel and requested genetic testing to establish paternity. The court granted respondent's request.

¶ 8                          B. The Adjudication of Wardship
¶ 9 In March 2018, the trial court conducted an adjudication hearing. The respondent mother stipulated that C.P. was a neglected minor whose environment was injurious to his welfare due to her mental illness.

¶ 10 Regarding respondent, the State asked the trial court to take judicial notice of the mother's stipulation. The State also called respondent to testify. Respondent admitted he had been incarcerated in the Department of Juvenile Justice since May 2017 and had a release date in July 2018. On cross-examination, respondent stated that he did not know if he was C.P.'s father and that he was not aware of the results of any genetic testing. Respondent did not offer any evidence on his behalf. The court found C.P. was a neglected minor whose environment was injurious to his welfare.

¶ 11                            C. The Dispositional Hearing
¶ 12 In April 2018, the trial court conducted a dispositional hearing at which respondent appeared in person and with counsel. The parties did not offer any evidence other than a written report prepared by DCFS that recommended guardianship of C.P. be placed in the guardianship administrator of DCFS, who would then determine who would be C.P.'s custodian.

¶ 13 The trial court found C.P. was neglected and it was in his best interest that he be made a ward of the court. The court further found the mother and respondent were unfit and unable, for

reasons other than financial circumstances alone, to care for, protect, train, or discipline C.P. and the health, safety, and best interest of C.P. would be jeopardized if he remained in the custody of his parents. See *id.* § 2-27(1). The court also found that appropriate services aimed at preservation and family reunification had been unsuccessful in rectifying the conditions that led to the finding of unfitness and inability to care for, protect, train, or discipline C.P. *Id.* § 2-27(1.5)(a). Therefore, the court removed guardianship of C.P. from the parents and placed guardianship in the guardianship administrator of DCFS. The court advised the mother and respondent they were required to fully cooperate with DCFS or they risked a termination of their parental rights.

¶ 14     This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16     Respondent appeals, arguing the trial court lacked jurisdiction to enter the dispositional order because (1) respondent is also a minor and (2) the State failed to serve his parents in accordance with section 2-15(1) of the Act. *Id.* § 2-15(1). We disagree and affirm.

¶ 17                              A. The Applicable Law

¶ 18     Resolution of this case depends upon the interpretation of a statute. The rules governing statutory interpretation are well settled. The cardinal rule of statutory construction is to ascertain and give effect to the legislative intent. *In re Jarquan B.*, 2017 IL 121483, ¶ 22, 102 N.E.3d 182. "The most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself." *Id.* When construing the provisions of the Act, the court should read the Act as a whole, construing words and phrases in light of the other relevant portions of the statute and not as isolated provisions. *Id.* Statutes should be construed to avoid absurd results. *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2015 IL 117418, ¶ 39, 30 N.E.3d 288. Questions of statutory interpretation present issues of law and are reviewed *de novo*. *In re Jarquan B.*, 2017 IL 121483, ¶ 21.

¶ 19     Section 2-15 of the Act addresses which persons are to be served in neglect proceedings, as well as how they are to be served, and provides as follows:

> "(1) When a petition is filed, the clerk of the court shall issue a summons with a copy of the petition attached. The summons shall be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition, except that summons need not be directed to a minor respondent under 8 years of age for whom the court appoints a guardian [*ad litem*] if the guardian [*ad litem*] appears on behalf of the minor in any proceeding under this Act.
>
>                                    * * *
>
> (5) Service of a summons and petition shall be made by: (a) leaving a copy thereof with the person summoned ***; (b) leaving a copy at his usual place of abode with some person of the family ***; or (c) leaving a copy thereof with the guardian or custodian of a minor ***." 705 ILCS 405/2-15(1), (5) (West 2016).

¶ 20                          B. The Parties' Arguments

¶ 21     Respondent argues that the trial court lacked personal jurisdiction over him because his parents were not served in accordance with section 2-15(1) of the Act. Respondent concedes

that, as used in the statute, "the minor" is most commonly associated with "the minor who is allegedly abused, neglected, or dependent." However, respondent contends that section 1-3(10) of the Act defines the term "minor" to mean "a person under the age of 21 years subject to this Act." *Id.* § 1-3(10). Because respondent was born in August 2001, he was only 16 at the time of the proceedings in this case. Accordingly, respondent claims that because he was a minor subject to the Act, the court lacked personal jurisdiction over him because his parents were never served.

¶ 22    The State argues that respondent's interpretation of the statute is absurd and contrary to the plain language of the Act. The State contends "the minor" refers to the minor who is the subject of the underlying proceeding and therefore, respondent's parents did not need to be served for the court to obtain personal jurisdiction over him. Additionally, the State asserts respondent forfeited his right to contest personal jurisdiction by participating in the proceedings and failing to object.

¶ 23                                    C. This Case
¶ 24                    1. *"The Minor" Does Not Mean a Minor Parent*
¶ 25    We conclude that the statute clearly contemplates that "the minor" in section 2-15 refers to the minor who is the subject of the neglect proceeding. We find convincing support for this conclusion in section 1-5 of the Act, which is titled "Rights of parties to proceedings," and provides, as follows:

> "the minor *who is the subject of the proceeding* and his parents, guardian, legal custodian or responsible relative who are parties respondent have the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and *** to be represented by counsel." (Emphasis added.) *Id.* § 1-5(1).

"The" is often used "to indicate that a following noun or noun equivalent is definite or has been previously specified by context or by circumstance." Merriam-Webster's Collegiate Dictionary 1217 (10th ed. 2000). When read in context, the term "the minor" is employed in an identical manner as in section 1-5 throughout the Act. We further conclude that the term "the minor" is used throughout the Act with the clear understanding that "the minor" is the minor who is the subject of the underlying proceeding.

¶ 26    Indeed, given the above, respondent's argument that, because the term "minor" is defined by the Act as "a person under the age of 21 years subject to this Act," every minor must be served through their legal guardians irrespective of their role in the underlying proceeding, is particularly unavailing. Section 1-3 provides definitions for specified words "unless the context otherwise requires." 705 ILCS 405/1-3 (West 2016). If we read the term "the minor" to mean "any minor subject to the Act," absurd results would ensue. It is well established we must construe statutes to avoid absurd results. *Illinois State Treasurer*, 2015 IL 117418, ¶ 39.

¶ 27    Moreover, section 2-15(1) states "[w]hen a petition is filed, the clerk of the court shall issue a summons with a copy of the petition attached." 705 ILCS 405/2-15(1) (West 2016). Section 2-13 provides what a "petition" is and what its contents must be. *Id.* § 2-13. In that section, "the minor" refers to "the minor upon whose behalf the petition is brought." *Id.* § 2-13(2)(e). Therefore, reading sections 1-5, 2-13, and 2-15 together, the term "the minor," in the context of section 2-15, means "the minor who is the subject of the underlying proceeding" or "the minor

upon whose behalf the petition is brought." These phrases are identical in meaning. Subsection (5) of section 2-15 prescribes the methods of service: (1) personal service, (2) abode service, "*or* [(3)] leaving a copy [of the summons and petition] with the guardian or custodian of *a minor*." (Emphases added.) *Id.* § 2-15(5). Accordingly, section 2-15 itself contemplates that a respondent might be a minor and provides three *alternative* methods of service, each one fully sufficient to confer personal jurisdiction upon the trial court.

¶ 28    We also note the legislative history of the Act supports our reading. When the legislature amended section 2-15(1) to provide for service upon the minor's custodians or guardians, it expressly stated it was not "limiting the service requirement" but was merely providing for an *additional* method by which service could be achieved. 84th Ill. Gen. Assem., House Proceedings, May 15, 1986, at 43-44 (statements of Representative Bowman). Respondent does not cite to any authority to suggest service on a minor's legal guardians is the only method of serving a minor.

¶ 29                                    2. *Waiver of Service*

¶ 30    In the alternative, it is well settled that "[w]here a juvenile appears before the court and participates in juvenile proceedings, he voluntarily submits to the jurisdiction of the court." *In re H.G.*, 322 Ill. App. 3d 727, 736, 750 N.E.2d 247, 254 (2001); see also *In re Shawn B.*, 218 Ill. App. 3d 374, 379, 578 N.E.2d 269, 273 (1991); *In re T.O.*, 187 Ill. App. 3d 970, 973-74, 543 N.E.2d 969, 972 (1989). Indeed, section 2-15(7) provides that "[t]he appearance of *** a person named as a respondent in a petition, in any proceeding under this Act shall constitute a waiver of service of summons and submission to the jurisdiction of the court." 705 ILCS 405/2-15(7) (West 2016).

¶ 31    Here, respondent appeared, requested and received counsel, requested and received genetic testing, and participated in the proceedings. Though he was incarcerated at the time he appeared, this court has held that an incarcerated defendant may still submit to the jurisdiction of the court through participation. See *People v. Rainey*, 325 Ill. App. 3d 573, 581, 758 N.E.2d 492, 499 (2001) (recognizing incarcerated defendant "had little choice but to appear in court" but acknowledging his submission to court's jurisdiction by his participation and his counsel's express waiver of personal service). Additionally, respondent does not argue, much less demonstrate, that any substantial interests have been prejudiced by the failure to serve his parents. See *In re Pronger*, 118 Ill. 2d 512, 524-25, 517 N.E.2d 1076, 1080-81 (1987) (noting minor respondent was not prejudiced by the lack of personal service). Accordingly, the trial court had personal jurisdiction over respondent.

¶ 32                            D. Failure to Join a Necessary Party

¶ 33    Though not argued as such in his brief, the real issue respondent raises is whether his parents, C.P.'s grandparents, should have been joined as necessary parties. However, "a grandparent must be made a party to the proceeding only if: (1) the grandparent is the person having custody and control of the grandchild; or (2) if the grandparent is the nearest known relative and the parent or guardian cannot be found." *In re R.M.B.*, 146 Ill. App. 3d 523, 529, 496 N.E.2d 1248, 1252 (1986) (citing *In re Jennings*, 68 Ill. 2d 125, 368 N.E.2d 864 (1977)).

¶ 34    Nothing in the record suggests respondent's parents meet any of these qualifications. In fact, the record suggests respondent has never met C.P. It is unclear what interest, if any, respondent's parents have in this case. Accordingly, we conclude respondent's parents were

not necessary parties.

¶ 35                                    III. CONCLUSION
¶ 36        For the reasons stated, we affirm the trial court's judgment.

¶ 37        Affirmed.

¶ 38        JUSTICE HOLDER WHITE, specially concurring:
¶ 39        While I agree with the majority's resolution of this matter, I specially concur to point out
paragraphs 32 through 34 (*supra* ¶¶ 32-34) are unnecessary. Neither party asks us to address
whether the parents of respondent father are necessary parties. Given neither party raises this
issue, the majority deprives the parties of the opportunity to weigh in on this issue and also robs
this court of the benefit of considering briefing on this issue. By raising and resolving this issue
*sua sponte*, the majority provides an advisory opinion on an issue not before the court. See
*People v. Hampton*, 225 Ill. 2d 238, 244, 867 N.E.2d 957, 960 (2007).
¶ 40        Thus, I would adopt the majority's resolution after removing paragraphs 32 through 34
(*supra* ¶¶ 32-34).