# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Hundley*, 2019 IL App (4th) 180380

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SALLY KAY HUNDLEY, Petitioner, Third-Party Plaintiff-Appellant and Cross-Appellee, and JOHN J. HUNDLEY, Respondent (Buckhart Sand & Gravel Company, Inc., Third-Party Defendant-Appellee and Cross-Appellant). |
| District & No. | Fourth District<br>Docket No. 4-18-0380 |
| Filed | April 2, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 15-D-234; the Hon. Jennifer M. Ascher, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Edward T. Graham Jr., of Meyer, Austin, Romano & Graham, of Taylorville, for appellant.<br><br>Andrew J. Martone and Ashlie Keener Kuehn, of Hesse Martone, P.C., of Springfield, for appellee. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Knecht and DeArmond concurred in the judgment and opinion. |

¶ 1    In November 2015, the trial court entered a judgment of dissolution of marriage, ordering respondent, John J. Hundley, to pay $370 per month in maintenance to petitioner, Sally Kay Hundley, upon the sale of their farmland in Rochester, Illinois. Although an auction was held that same month, the sale of the farmland was not finalized until September 2016. Meanwhile, in December 2015, Sally served an income withholding notice (withholding notice) pursuant to section 20 of the Income Withholding for Support Act (Act) (750 ILCS 28/20 (West 2014)) on John's employer and third-party defendant, Buckhart Sand & Gravel Company, Inc. (Buckhart). Buckhart began withholding income from John's paychecks but did not pay those withholdings to the Illinois State Disbursement Unit (SDU).

¶ 2    In May 2016, Sally filed a third-party complaint that alleged Buckhart knowingly failed to comply with the Act by not making payments pursuant to the withholding notice. In June 2016, Buckhart filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2014)), arguing that the withholding notice failed to include all of the information required by section 20(c) of the Act. In September 2016, the trial court granted Buckhart's motion to dismiss, finding that because the sale of the farmland had yet to occur, the withholding notice was invalid and did not require Buckhart's compliance.

¶ 3    Sally appealed the trial court's order, and this court reversed, concluding Buckhart was a payor subject to the Act. *In re Marriage of Hundley*, 2017 IL App (4th) 160720-U, ¶ 19. Because a payor's obligations under the Act are mandatory, we further concluded Buckhart could not challenge the validity of the underlying order for support. *Id.*

¶ 4    On remand, Buckhart continued to argue that the withholding notice was invalid. Buckhart also contended any violation of the Act was not committed knowingly and asserted several affirmative defenses. In January 2018, the trial court conducted a bench trial. In February 2018, the court issued a written order, finding that the initial failure to pay over withheld amounts pursuant to the withholding notice was an innocent mistake, but the violation became "knowing" when Buckhart failed to correct the mistake until May 2016. See 750 ILCS 28/35(a) (West 2014). The court then assessed a statutory penalty in the amount of $112,000.

¶ 5    Both Buckhart and Sally filed posttrial motions. Buckhart claimed the Act authorized a penalty only for knowing violations. Sally contended that the trial court miscalculated the date Buckhart paid the SDU. In May 2018, the trial court modified its judgment and reduced the penalty to $53,400. The court agreed with Buckhart that section 35(a) applied only to knowing violations and found that Buckhart knowingly violated the Act after receiving a nonreceipt notice pursuant to section 45(j) in February 2016. See *id.* § 45(j).

¶ 6    Sally appeals, arguing the trial court erred by calculating the penalty beginning in February 2016 instead of January 2016. She contends the penalty provision in section 35(a) unambiguously requires a penalty beginning on the date any withholding under the initial withholding notice is not paid to the SDU. Buckhart cross-appeals, arguing the trial court erred by (1) concluding the withholding notice was valid because it failed to contain all the information required by section 20(c) and (2) denying its affirmative defenses. Buckhart also claims the trial court's finding of a knowing violation was against the manifest weight of the evidence. We conclude that the trial court correctly interpreted the Act and its findings were not against the manifest weight of the evidence. Accordingly, we affirm the trial court's

judgment.

¶ 7                                    I. BACKGROUND
¶ 8                         A. The Dissolution of Marriage Proceedings
¶ 9          In April 2015, Sally filed a petition in Sangamon County for dissolution of marriage from
John. At that time, John worked for Buckhart as a heavy equipment operator. In August 2015,
Sally and John submitted a marital settlement agreement to the trial court pursuant to the
Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/502 (West 2014)), in which
John agreed to pay Sally maintenance on the following condition:

> "On and after the first day of the month next following the sale of the parties' farm real
> estate located at rural Rochester, Illinois, and the distribution of the proceeds of the sale
> thereof as otherwise set forth herein, husband shall pay to wife the sum of $370.00 each
> month."

The agreement further provided that the farm real estate "shall be sold with reserve at public
auction."

¶ 10         In November 2015, the trial court entered a judgment of dissolution of marriage that
incorporated the marital settlement agreement. Later that month, the farm real estate sold at
public auction for a price significantly less than the parties anticipated. Additionally, the sale
was not finalized as planned under the judgment of dissolution of marriage. The sale was
eventually finalized in September 2016.

¶ 11                              B. The Third-Party Complaint
¶ 12         In May 2016, Sally filed a third-party complaint against Buckhart, alleging it knowingly
failed to comply with a withholding notice in violation of section 35(a) of the Act. 750 ILCS
28/35(a) (West 2014). Sally alleged that in December 2015, she sent Buckhart an income
withholding notice by certified mail that instructed it to withhold $370 per month from John's
pay beginning on January 1, 2016. However, Sally did not receive any payments. Pursuant to
section 45(j) of the Act, she sent Buckhart a nonreceipt notice by certified mail informing
Buckhart of the lack of payment and requesting an explanation or payment in compliance with
the statute within 14 days. *Id.* § 45(j). The complaint asserted that Buckhart failed to respond or
pay over the necessary funds and therefore claimed Sally was entitled to a statutory penalty of
$100 per day for each payment Buckhart missed. See *id.* § 35(a).

¶ 13         In June 2016, Buckhart filed a motion to dismiss pursuant to section 2-619 of the Code of
Civil Procedure, arguing that the withholding notice failed to include all the information
required by section 20(c) of the Act. Specifically, Buckhart maintained that the withholding
notice failed to state the "amount required for current support under the order for support" (*id.*
§ 20(c)(2)) because, pursuant to the marital settlement agreement, John was not required to pay
support until the sale of the farm real estate, which had not yet occurred. Buckhart further
contended that the withholding notice was invalid because (1) a copy of the underlying order
for support was not attached, (2) the notice did not include a "remittance ID," and (3) the
notice did not identify from where the underlying order for support came. Alternatively,
Buckhart asserted that it had been withholding the amounts required since January 2016 but
due to a computing error had not paid them over to the SDU. Accordingly, any violation was

the product of an honest mistake and was not done "knowingly" as required by section 35 of the Act. *Id.* § 35(a).

¶ 14    In September 2016, the trial court granted Buckhart's motion to dismiss. In its written order, the court found that because the underlying order for support did not require John to pay maintenance until the farm real estate had been sold and the proceeds disbursed, John was not an "obligor" under the Act. See *id.* § 15(e) (" 'Obligor' means the individual who owes a duty to make payments under an order for support."). Because John was not an obligor, Buckhart could not be a "payor" and was not required to comply with the Act. See *id.* § 15(g) (" 'Payor' means any payor of income to an obligor.").

¶ 15                              C. The First Appeal

¶ 16    Sally appealed the trial court's dismissal of her third-party complaint, arguing that Buckhart was a payor and had no ability to challenge the terms of the underlying order under the Act. Buckhart responded that the withholding notice was invalid, relying on *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, 999 N.E.2d 331 (holding that the failure to include in a withholding notice the information required by section 20(c) renders the notice invalid). Buckhart reiterated the arguments raised in its motion to dismiss—namely, that the withholding notice (1) was not regular on its face because a copy of the underlying order for support was not attached, (2) was missing information, and (3) inaccurately stated that support was due on January 1, 2016, contrary to the order for support that required the farm real estate to be sold as a condition precedent to John's maintenance obligation.

¶ 17    This court agreed with Sally, reversed the trial court's judgment, and remanded the case for further proceedings. We distinguished *Schultz* because (1) the third party in that case alleged the withholding notice was invalid and defective on its face, "not that the underlying order of support itself was invalid," and (2) the Act "does not require an underlying order of support to be attached to a withholding [notice]." *Hundley*, 2017 IL App (4th) 160720-U, ¶¶ 15, 16. Additionally, we noted that the Act is mandatory and "does not allow a third-party respondent served with a valid withholding [notice] to contest the validity of an underlying order of support." *Id.* ¶ 19.

¶ 18                         D. The Proceedings on Remand

¶ 19    On remand, in August 2017, Buckhart filed an answer and denied that the withholding notice was valid or that any violation was knowing. Buckhart asserted as affirmative defenses fraud, equitable estoppel, "satisfaction," and "illegal imposition of judicial powers to obligee." Buckhart also asserted that the withholding notice was invalid for failing to comply with section 20(c) in the following ways: (1) it failed to state the date of the underlying support order (750 ILCS 28/20(c)(1.1) (West 2014)), (2) it failed to include the duties of the payor and potential penalties under the Act in boldface type, the size of which is equal to the largest type on the notice (*id.* § 20(c)(7)), (3) it incorrectly stated the "amount required for current support" because John's maintenance obligation had not yet accrued (*id.* § 20(c)(2)), (4) it was not "in the standard format prescribed by the federal Department of Health and Human Services" (*id.* § 20(c)(1)), and (5) it was not "regular on its face" because a copy of the underlying support order was not attached (*id.* § 35(c)).

¶ 20    Sally moved to strike Buckhart's affirmative defenses because Buckhart lacked standing to challenge the underlying order for support on the basis of fraud, equitable estoppel,

satisfaction, "illegal imposition of judicial powers to obligee," or the validity of the underlying order. Sally also asserted that this court had decided the issue of validity of the withholding notice in the prior appeal.

¶ 21 While Sally's motion to strike was pending, the parties filed various dispositive motions and engaged in discovery. In November 2017, the trial court denied Sally's motion to strike affirmative defenses. At a status hearing in December 2017, the parties agreed to withdraw all pending dispositive motions, and the court set the matter for a bench trial.

¶ 22                                          1. *The Trial*

¶ 23 In January 2018, the trial court conducted a bench trial. The parties stipulated that (1) Buckhart received an income withholding notice requiring it to withhold $370 per month from John's pay beginning January 1, 2016, (2) John was employed by Buckhart and paid weekly at all relevant times, and (3) Buckhart withheld the amounts required from each pay check, but failed to pay the amounts to the SDU until May 2016. As a result, Buckhart agreed Sally was entitled to the statutory presumption that the violation was knowing. See *id.* § 35(a) ("The failure of a payor, on more than one occasion, to pay amounts withheld to the State Disbursement Unit *** creates a presumption that the payor knowingly failed to pay over the amounts.").

¶ 24 Barney Flatt, Buckhart's general manager, testified that on December 9, 2015, he received by certified mail an income withholding notice from Sally's attorney. Per his usual practice, Flatt gave the withholding notice to Diana Little, Buckhart's administrative assistant. Also per customary practice, Flatt instructed Little to give the withholding notice to Buckhart's accountant, Jeff Mortimer, who would then ensure the amount stated in the notice would be withheld and disbursed as requested.

¶ 25 Flatt further testified that he received by certified mail a nonreceipt notice "on or about February 17," 2016, which indicated Sally had not received the funds required by the withholding notice. (At various points, Flatt testified that he received the nonreceipt notice on both February 16 and February 17. The certified mail receipt admitted into evidence indicates Flatt signed for the nonreceipt notice on February 19, 2016, and the trial court found it was received on that date.) Flatt gave the nonreceipt notice to Little with the intention that she would give it to Mortimer, who would ensure the money was being withheld and distributed. Flatt averred that he had always intended to withhold and distribute the amount required by the initial withholding notice and never ordered anyone to do otherwise.

¶ 26 On cross-examination, Flatt admitted he was aware on February 16, 2016, that Sally was not receiving the funds required by the withholding notice and that the nonreceipt notice required Buckhart to either provide an explanation to Sally or make the required payment within 14 days. Flatt stated he did not follow up after telling Little to address the issue because he assumed it would be taken care of per usual practice. However, Flatt admitted he spoke with John around that time, and John indicated to him that the maintenance was being withheld from his checks. John did not report that the money should not have been withheld or that the amount was incorrect.

¶ 27 Little, Buckhart's administrative assistant, testified that she had worked for Buckhart for 24 years, handling accounts payable, payroll, answering the phone, and "other administrative duties." Buckhart paid its employees weekly, including John Hundley. Little confirmed that in December 2015, Flatt gave her the withholding notice and she gave it to Mortimer. Little did

- 5 -

not remember receiving the nonreceipt notice but agreed that the established business practice was to forward all income withholding notices to Mortimer, and had she received the nonreceipt notice, she would have passed it on.

¶ 28 Little testified that she became aware that the withholdings were not being sent to the SDU at the end of April 2016. Buckhart corrected the situation in May. Little explained that a computer program automatically calculated withholdings, but she manually wrote disbursement checks for each applicable employee and mailed them to the SDU each week. On May 23, 2016, Little issued and mailed two disbursement checks to the SDU in amounts sufficient to cover the missed disbursements and statutory interest. Thereafter, Little made weekly payments to the SDU in compliance with the withholding notice.

¶ 29 Jeff Mortimer testified he was the accountant for Buckhart. Part of his work included handling employee garnishments. Mortimer stated that he received a withholding notice for John in December 2015 from Little. To comply with the withholding notice, Mortimer made an entry in Buckhart's payroll system to deduct the appropriate amount from John's wages. However, Mortimer mistakenly failed to make the corresponding entry required to disburse the withheld funds to the SDU.

¶ 30 Mortimer denied ever seeing the nonreceipt notice or being made aware that the funds were not being disbursed to the SDU. Mortimer stated he became aware of the mistake on May 23, 2016, when Little told him there was a problem. Mortimer investigated and discovered that although the correct amounts were withheld each week, they were not being paid out. He immediately corrected the computer error, totaled the amounts withheld, and instructed Little to send a check to the SDU.

¶ 31 Mortimer characterized the error as "a horrible mistake" that occurred when he initially received the withholding notice. He had always intended to withhold the wages in conformity with the withholding notice, and no one ever instructed him to do anything different. Mortimer testified that he was solely responsible for making the necessary entries to effectuate garnishments for Buckhart and for reviewing and correcting any mistakes if Buckhart became aware of them.

¶ 32 On cross-examination, Sally's attorney showed Mortimer a copy of the nonreceipt notice, and he again denied ever seeing it. Mortimer stated that he had since reviewed it and that had Buckhart provided it to him, he would have corrected the mistake. Mortimer clarified that, even though the withholding notice stated withholdings should start on January 1, 2016, a withholding did not occur for that date even though it was a payday. Due to union rules, John's January 1, 2016, wages were paid in 2015. Therefore, the withholdings began the following week.

¶ 33 Kellie Austif testified on behalf of Sally. Austif worked as a legal assistant for Sally's attorney. Austif sent the withholding notice and notice of nonreceipt to Buckhart via certified mail. She also called Buckhart dozens of times between February 2016 and May 2016 in an attempt to determine why Sally was not receiving maintenance in accordance with the withholding notice. Austif stated she left messages with people at Buckhart but never received a response. Austif also never received any written correspondence from Buckhart in response to the nonreceipt notice.

## 2. *The Trial Court's Order*

¶ 35    In February 2018, the trial court issued a written order. After recounting the relevant testimony, the court denied Buckhart's claim that the withholding notice failed to state the current amount due in the underlying order as required by section 20(c)(2) based upon this court's prior holding on appeal. The trial court also denied Buckhart's remaining affirmative defenses without comment.

¶ 36    Next, the trial court addressed whether Buckhart had rebutted the statutory presumption that it knowingly failed to pay the withheld amounts to the SDU. The court found that Mortimer's failure to enter the proper disbursement code was a mistake. Nonetheless, Flatt admitted he received the nonreceipt notice on February 19, 2016, but took no action, and Buckhart did not offer any explanation for why it did not correct the error. Accordingly, the court concluded that although the initial violation was not committed knowingly, the violation became knowing "when the error went unresolved until May of 2016." The court also found Buckhart violated section 45(j) of the Act by failing to respond to the nonreceipt notice or remit the required payments.

¶ 37    Based on these violations, the trial court then calculated the $100 per day penalty as set forth in section 35(a). The court found that the violations were cured when Little mailed the withholdings to the SDU on May 23, 2016. The court found a violation for each week beginning on January 8, 2016. After accounting for the seven business day grace period and $10,000 per violation limit (see *id.*), the court assessed a penalty in the amount of $112,000 against Buckhart.

## 3. *The Posttrial Motions*

¶ 39    Later in February 2018, Buckhart filed a motion to modify the trial court's judgment, in which it argued that the penalty should only be assessed for knowing violations. Buckhart asserted that its violations were the product of an innocent mistake, but to the extent the trial court disagreed, section 35(a) limited penalties to knowing violations. Buckhart claimed the earliest date the violations could have become knowing was after it received the nonreceipt notice in February 2016.

¶ 40    Sally filed a motion to reconsider, arguing that the trial court erred by permitting Buckhart to present evidence that it mailed the payments to the SDU on May 23, 2016. According to Sally, Buckhart made a judicial admission that it paid the SDU on May 26, 2016, in response to her requests to admit. As a result, Sally requested an additional $6600 in penalties.

¶ 41    In May 2018, the trial court issued an order granting Buckhart's motion in part and denying all other requested relief from the parties. The trial court agreed with Buckhart that section 35(a) only applied to knowing violations. Consistent with its prior order, the court determined that the initial error was an honest mistake. However, the failure to pay the withheld funds to the SDU became a knowing violation when Buckhart received the nonreceipt notice on February 19, 2016. The court recalculated the penalty beginning on that date and concluded Buckhart owed $53,400.

¶ 42    This appeal followed.

¶ 43                                II. ANALYSIS

¶ 44        Sally appeals, arguing the trial court erred by calculating the penalty beginning in February
2016 instead of January 2016. She contends that the penalty provision in section 35(a)
unambiguously requires a penalty beginning on the date any withholding under the initial
withholding notice is not paid to the SDU.

¶ 45        Buckhart cross-appeals, arguing the trial court erred by concluding the withholding notice
was valid because it failed to contain all the information required by section 20(c) and by
denying its affirmative defenses. Buckhart also claims the trial court's finding of a knowing
violation was against the manifest weight of the evidence.

¶ 46        We conclude that the trial court correctly interpreted the Act and its findings were not
against the manifest weight of the evidence. Accordingly, we affirm the trial court's judgment.

¶ 47                          A. The Standard of Review

¶ 48        When a trial court sits without a jury, appellate courts will not disturb its findings of fact
unless they are against the manifest weight of the evidence. *In re Marriage of Schmidgall*,
2018 IL App (3d) 170189, ¶ 39, 115 N.E.3d 344. A finding is against the manifest weight of
the evidence only when the opposite conclusion is clearly apparent or when the findings are
unreasonable, arbitrary, or not based on the evidence. *Cooke v. Maxum Sports Bar & Grill,
Ltd.*, 2018 IL App (2d) 170249, ¶ 53, 109 N.E.3d 811. However, when reviewing the legal
effect of undisputed facts and a trial court's interpretation of a statute, courts apply a *de novo*
standard of review. *Schmidgall*, 2018 IL App (3d) 170189, ¶ 39.

¶ 49                          B. The Law of the Case

¶ 50        As an initial matter, Sally argues that this court previously decided the issue of whether the
withholding notice complied with the requirements of section 20(c). As a result, Sally contends
the law-of-the-case doctrine bars Buckhart from relitigating the validity of the withholding
notice. Buckhart claims the withholding notice's validity was not an issue in the first appeal
and therefore was subject to relitigation on remand. We agree with Buckhart in part.

¶ 51                      1. *The Law-of-the-Case Doctrine*

¶ 52        The law-of-the-case doctrine bars relitigation of an issue previously decided in the same
case "and encompasses not only the court's explicit decisions, but those issues decided by
necessary implication." *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d)
120273, ¶ 15, 996 N.E.2d 77. "When an appellate court decides a question of law, that decision
ordinarily binds both the trial court on remand and the appellate court in a subsequent appeal."
*Fox Valley Families Against Planned Parenthood v. Planned Parenthood of Illinois*, 2018 IL
App (2d) 170137, ¶ 9, 101 N.E.3d 132. However, issues that were presented but not decided in
a prior appeal do not become law of the case. *Id.*

¶ 53                                2. *This Case*

¶ 54        In the first appeal, Buckhart raised the issue of the withholding notice's validity. However,
this court addressed only the reasoning provided by the trial court for granting Buckhart's
motion to dismiss, namely, "whether Buckhart was required to comply with the withholding
[notice] served by Sally, even though the condition precedent triggering John's maintenance

obligation in the underlying order of support had not yet occurred." *Hundley*, 2017 IL App (4th) 160720-U, ¶ 12. In answering that question, we distinguished *Schultz* and held that Buckhart could not challenge the withholding notice based on the validity of the underlying order. *Id.* ¶ 15. We further distinguished *Schultz* by noting that the Act did not require Sally to attach a copy of the underlying support order to the withholding notice and any failure to do so did not render the withholding notice facially deficient. *Id.* ¶ 16. We concluded that "[t]he language of the [Act] does not allow a third-party respondent served with a valid withholding [notice] to contest the validity of an underlying order of support." *Id.* ¶ 19.

¶ 55    Although our prior ruling implies the withholding notice was valid, we did not directly or implicitly address Buckhart's arguments concerning whether the withholding notice met each and every requirement contained in section 20(c). However, a necessary implication of our holding is that Buckhart cannot challenge the validity of the withholding notice under subsection (c)(2) because determining whether the notice correctly stated the "required *** current support" (750 ILCS 28/20(c)(2) (West 2014)) necessitates an evaluation of the underlying order of support. In reaching this conclusion, we also held that attaching the underlying order of support to the withholding notice was not required to render the notice facially valid. Accordingly, Buckhart's arguments depending on the underlying order of support are barred by the law-of-the-case doctrine.

¶ 56    Buckhart's remaining arguments could have been addressed in the prior appeal. However, because they were not, the trial court was free to consider them on remand, and we now address them.

¶ 57                    C. Whether the Withholding Notice Was Valid

¶ 58    Buckhart argues on appeal the withholding notice was invalid because it failed to (1) state the current amount due (*id.*), (2) state the date of the underlying order relied upon (*id.* § 20(c)(1.1)), (3) state the duties of the payor and potential penalties in boldface type in a font size that equals the largest in the notice (*id.* § 20(c)(7)), and (4) be in the form required by the federal Department of Health and Human Services (*id.* § 20(c)(1)). We address each argument in turn.

¶ 59                    1. *The Applicable Law*

¶ 60    "Section 20(c) of the Act sets forth the information that must be included in the notice of withholding." *Schultz*, 2013 IL 115738, ¶ 14. It provides in relevant part as follows:

> "The income withholding notice shall:
>
>     (1) be in the standard format prescribed by the federal Department of Health and Human Services; and
>
>     (1.1) state the date of entry of the order for support upon which the income withholding notice is based; and
>
>     (2) direct any payor to withhold the dollar amount required for current support under the order for support; and
>
>                    * * *
>
>     (7) in bold face type, the size of which equals the largest type on the notice, state the duties of the payor and the fines and penalties for failure to withhold and pay over income and for discharging, disciplining, refusing to hire, or otherwise penalizing the

obligor because of the duty to withhold and pay over income under this Section[.]" 750 ILCS 28/20(c)(1), (1.1), (2), (7) (West 2014).

The mandatory language employed by section 20(c) means there must be strict compliance and the failure to include any of the required information (except the obligee's signature) affects the validity of the notice of withholding. *Schultz*, 2013 IL 115738, ¶ 18.

¶ 61                                        2. *The Current Amount Due*

¶ 62      Buckhart first argues that the withholding notice failed to state the current amount of support because the condition precedent in the underlying order had not yet occurred. We held in the prior appeal in this case that Buckhart did not have the ability to challenge the underlying order. Therefore, this argument is barred by the law-of-the-case doctrine.

¶ 63      Additionally, the structure of the Act demonstrates that the legislature did not intend for a payor to be able to challenge a withholding notice based on an underlying support order. (To assist the reader in understanding this argument, we note that an "obligor" is one who owes support, in this case John; an "obligee" is one to whom support is owed, here, Sally; and a "payor" is one who pays income to an obligor, namely, the employer, Buckhart. See *supra* ¶ 14.) Section 20(a)(1) of the Act permits a support order to provide a future, rather than current, date support is owed when the "alternative arrangement *** ensures payment of support." 750 ILCS 28/20(a)(1) (West 2014). Section 30 provides a method for obligees to serve withholding notices under orders for support that "ha[ve] not required that income withholding take effect immediately" without a delinquency if the circumstances "no longer ensure[ ] payment of support." *Id.* § 30(a). The Act specifically gives the *obligor* the ability to challenge a withholding notice filed under section 30, but not a payor. *Id.* § 30(c). This differential treatment makes sense because a payor has no interest in the funds and should not be making a legal determination as to the validity of the conditions giving rise to the withholding. This is also why the Act gives immunity to any payor who complies with a withholding notice that is "regular on its face." *Id.* § 35(c).

¶ 64      Moreover, the Act specifically contemplates that withholding notices may contain mistakes about the current amount due or even arrearages. Section 40 authorizes an obligor to petition the court "to correct a term contained in an income withholding notice to conform to that stated in the underlying order for support for: (1) the amount of current support; [or] (2) the amount of the arrearage." *Id.* § 40(c). Notably, the payor is *not* granted a similar authority in section 40 or any other section of the Act. Instead, section 40 provides that "[t]he income withholding notice *shall continue to be binding upon the payor* until service of an amended income withholding notice or any order of the court or notice entered or provided for under this Section." (Emphasis added.) *Id.* § 40(g). Had the legislature intended payors to challenge mistakes in the amount of withholdings based on the underlying order, it would have given them the same rights as obligors. It did not. Accordingly, Buckhart could not challenge the validity of the withholding notice on the basis that it stated a current amount required for support that was different from the underlying order.

¶ 65                                   3. *The Date of the Underlying Order*

¶ 66      Second, Buckhart argues the withholding notice incorrectly listed the date of the underlying order for support that section 20(c)(1.1) required. Buckhart claims the withholding

- 10 -

notice states November 4, 2015, as the date of the order, but this date is incorrect because support was not owed until the condition precedent had occurred. We disagree.

¶ 67    The record demonstrates that the trial court entered only one order for support and that order was entered on November 4, 2015. Sally has always cited the November 4, 2015, order as the underlying order for support upon which the income withholding notice was based. Regardless of when support became owed in fact, the date of the order relied upon was November 4, 2015, and the trial court did not err by denying Buckhart's affirmative defense.

¶ 68                          4. *Typeface and Font Size*

¶ 69    Third, Buckhart contends the withholding notice did not comply with section 20(c)(7) because it did not state the duties of the payor and possible penalties for noncompliance in boldface type in a size equal to the largest size in the notice. Buckhart also complains that Sally merely copied the relevant provisions of the Act and attached them to the notice and this could not be what the Act requires. We disagree.

¶ 70    The trial court did not make any specific findings regarding this requirement. The court simply denied the affirmative defense summarily. Our review of the withholding notice does not convince us that the trial court's ruling was improper. The duties and penalties were unquestionably in boldfaced type and they appear to be in the same size as the largest type on the notice. Additionally, we note that the withholding notice appears to be identical to the one listed on the Illinois Supreme Court website. See Ill. Supreme Court Commission on Access to Justice, Income Withholding for Support (July 1, 2017), http://illinoiscourts.gov/Forms/ approved/divorce/Divorce_with_Children_IWO_Illinois.pdf [https://perma.cc/T8LA-MWM9]. That form notice attached several pages of the statutory language from the Act that state the payor's duties and possible penalties as well as the rights, remedies, and duties of the obligor.

¶ 71                          5. *The Proper Form*

¶ 72    Finally, Buckhart claims the withholding notice was not in the form prescribed by the federal Department of Health and Human Services as required by section 20(c)(1) because a copy of the underlying order for support was not attached. We rejected this argument in the prior appeal, and Buckhart does not argue that our previous ruling was manifestly erroneous. Accordingly, the law-of-the-case doctrine prevents Buckhart from raising this argument.

¶ 73                          6. *The Nonreceipt Notice*

¶ 74    We view as significant that Buckhart did not contest the validity of the withholding notice at any time before Sally filed her third-party claim. As noted by the supreme court in *Schultz*, "a withholding notice is considered 'regular on its face' under both Illinois and federal law when it is a completed document that contains the necessary information required by the form adopted by the United States Secretary of Health and Human Services." *Schultz*, 2013 IL 115738, ¶ 23. The federal statute requires that the form notice "contain only such information as may be necessary for the employer to comply with the withholding order." 42 U.S.C. § 666(b)(6)(A)(ii) (2012). Buckhart immediately began withholding the amount required in the notice. Mortimer testified that he was responsible for reviewing withholding notices and ensuring Buckhart complied with them. He admitted he simply made a mistake and failed to

make the proper entry to ensure the withheld funds were paid over to the SDU. Clearly, then, the withholding notice had all the necessary information for Buckhart to comply.

¶ 75     Buckhart claims the instructions on the Department of Health and Human Services form require a copy of the underlying order to be attached when the withholding notice is sent by an obligee or attorney. See Dep't of Health and Human Servs., Income Withholding for Support, www.acf.hhs.gov/sites/default/files/ocse/omb_0970_0154.pdf (last visited Mar. 15, 2019) [https://perma.cc/YE9G-AUL5]. However, the instructions on the form also state that if a withholding notice "is not regular on its face, you *must* check this box and return the [notice] to the sender." (Emphasis in original.) *Id.* Buckhart cannot claim the instructions entitle it to relief when it failed to follow those very instructions. Had Buckhart rejected the withholding notice in December 2015 when it was received, this case may well have been adjudicated differently by both the trial court and this court. Raising such a defense now is simply untimely.

¶ 76     Moreover, section 45(j) requires a payor, within 14 days of receiving a nonreceipt notice, to either (1) explain why funds are not being withheld or (2) make the required payments plus interest. 750 ILCS 28/45(j) (West 2014). Buckhart admitted it received the nonreceipt notice but did not comply with the instructions. Again, had there been an issue with the withholding notice's validity, it would not be unreasonable to expect or require Buckhart to point out the notice's deficiencies at that time. Sally could have then corrected the problems by providing the correct information.

¶ 77     The legislature included section 45(j) to improve communication between obligees and payors to ensure support payments are made on a timely basis. A payor who fails to assert the lack of validity of a withholding notice in response to a properly served nonreceipt notice defeats the purpose of the legislation. Under the facts of this case, given the context that Buckhart immediately began withholding the amounts requested in the withholding notice, we conclude that Buckhart conceded the validity of the withholding notice when it did not respond to Sally's nonreceipt notice.

¶ 78                               D. Buckhart's Affirmative Defenses
¶ 79     Buckhart next argues that the trial court erred by denying its affirmative defenses. Sally responds that its defenses are barred by the law-of-the-case doctrine. We address each defense in turn.

¶ 80                                    1. *Judicial Power*
¶ 81     Buckhart claims that the Act impermissibly grants attorneys the power to issue court orders in violation of the Illinois Constitution's requirement that all judicial power be vested in the courts. Buckhart claims there is no valid underlying order for support in this case and, therefore, Sally's counsel is essentially issuing a court order if Buckhart is required to comply with the withholding notice. We disagree.

¶ 82     First, we conclude this argument has been forfeited. Buckhart cites just two authorities in support of its argument: (1) article II, section 1, of the Illinois Constitution, which states "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another" (Ill. Const. 1970, art. II, § 1), and (2) *Agran v. Checker Taxi Co.*, 412 Ill. 145, 105 N.E.2d 713 (1952). The plain text of the Illinois Constitution does not cover this case. *Agran* struck down a law that regulated the manner in which a court could

dismiss a lawsuit for want of prosecution because it was an unconstitutional restriction by the legislature on judicial power. *Id.* at 149-50. Buckhart makes no argument regarding how this situation is analogous. Appellate courts are not depositories where litigants may dump the burden of argument and research; they are entitled to have the issues clearly defined and a cohesive legal argument presented. *Walters v. Rodriguez*, 2011 IL App (1st) 103488, ¶ 5, 960 N.E.2d 1226. Buckhart failed to meet that standard here, and its arguments are forfeited as a result.

¶ 83    To the extent we understand Buckhart's argument, we disagree with it. An attorney or obligee is not issuing a court order when it sends a withholding notice. They are simply providing a notice required by statute or court order. Providing such a notice is no indication that the attorney or obligee is exercising any judicial power.

¶ 84    To the extent Buckhart is worried about obligees and their attorneys having unlimited power to issue withholding notices, the Act provides ample procedural safeguards. For instance, the Act requires all withholding notices to properly state the amounts owed in compliance with an underlying support order. 750 ILCS 28/20(c)(2) (West 2014). If the withholding notice is incorrect, obligors have the ability to challenge the amount withheld. *Id.* § 40(c). Payors, however, must comply with a withholding notice until they receive an amended notice or order from the court. *Id.* § 40(g). It makes no difference to the payor whether the funds are paid to the obligor or to the SDU. The Act grants immunity to payors who comply with incorrect withholding notices so long as they are regular on their face. *Id.* § 35(c). And the Act also states that any obligee who willfully violates the terms of the Act is subject to contempt. *Id.* § 50(b). Nothing in the Act prevents a payor from providing the withholding notice to the obligor if it believes the notice is incorrect but facially valid. Accordingly, the Act contains sufficient safeguards against any "abuse" about which Buckhart claims to be concerned.

¶ 85                              2. *The Statute of Frauds*

¶ 86    Buckhart next claims the statute of frauds prevents enforcement of the withholding notice against it because Sally and John never modified the marital settlement agreement to provide for immediate support. The statute of frauds requires certain contracts to be in writing and signed by the party to be charged for them to be enforceable. 740 ILCS 80/1 (West 2016); *Crawley v. Hathaway*, 309 Ill. App. 3d 486, 488, 721 N.E.2d 1208, 1210 (1999). However, Sally is not attempting to enforce a contract and no contract—written, oral, or otherwise—exists between Sally and Buckhart. Sally's cause of action arises out of Buckhart's statutory duty to comply with a withholding notice that is regular on its face. Accordingly, the trial court properly denied Buckhart's statute of frauds defense.

¶ 87                              3. *Equitable Estoppel*

¶ 88    Buckhart also claims Sally should be equitably estopped from recovering under the Act because she misrepresented the fact that she was owed maintenance and Buckhart relied on this representation to its detriment. "Equitable estoppel may be defined as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *Geddes v. Mill Creek Country Club,*

*Inc.*, 196 Ill. 2d 302, 313, 751 N.E.2d 1150, 1157 (2001). The Illinois Supreme Court has explained

> "To establish equitable estoppel, the party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Id.* at 313-14.

¶ 89 Here, Buckhart did not prove that Sally misrepresented the fact that she was owed maintenance or that it was prejudiced by any such representation. Flatt admitted that he confirmed with John that the support was being withheld and John never claimed the money should not have been withheld. The only reason Sally was able to recover under the Act was that Buckhart failed to pay the amounts withheld over to the SDU. In short, even had Sally made a misrepresentation, and had Buckhart complied with it, it would not have been subject to punishment from John or under the Act. Accordingly, the trial court properly denied Buckhart's equitable estoppel defense.

¶ 90                                     4. *Condition Precedent*

¶ 91 Buckhart also alleges Sally failed to prove that she complied with all conditions precedent to be entitled to the maintenance. It is unclear whether Buckhart asserts that Sally was required to prove that the property had been sold in order for her maintenance to be due as stated in the underlying order for support or that Sally was required to prove she complied with all elements of the Act before she was entitled to statutory penalties. Under either argument, Buckhart fails.

¶ 92 As stated earlier, we ruled in the prior appeal that Buckhart cannot base a defense on the condition precedent in the underlying order. Moreover, the cases Buckhart relies upon deal with contracts. Sally's action is based on the Act, not a contract, and therefore, Buckhart's defense fails.

¶ 93 To the extent Buckhart claims Sally did not comply with all requirements under the Act, we have already addressed and rejected any alleged shortcomings asserted by Buckhart regarding the withholding notice, and Buckhart does not argue that Sally failed to comply with the Act in any other way.

¶ 94                  E. Whether the Finding of a Knowing Violation Was
                            Against the Manifest Weight of the Evidence

¶ 95 Buckhart's final claim on its cross-appeal is that the trial court's finding that it knowingly failed to pay the withheld funds over to the SDU was against the manifest weight of the evidence. Buckhart contends that the evidence showed that Buckhart always intended to comply with the withholding notice and its failure to do so was the result of an honest mistake in the accounting software. Buckhart also claims the Act is only supposed to punish those who purposely disregard a court's support order, relying on *In re Marriage of Solomon*, 2015 IL

App (1st) 133048, ¶ 35, 29 N.E.3d 560. We disagree.

¶ 96                                    1. *The Applicable Law*

¶ 97        Section 35 states, "If the payor knowingly fails to withhold the amount designated in the income withholding notice or to pay any amount withheld to the State Disbursement Unit," then the payor shall pay a penalty of $100 per day. 750 ILCS 28/35(a) (West 2014). Though "knowingly" is not defined, several cases have addressed the question of whether a particular violation was "knowing." In *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 208, 652 N.E.2d 438, 444 (1995), this court reviewed the legislative history of the Act and concluded that it was not intended to cover "innocent[ ] or negligent[ ]" violations. We determined that the employer in *Dunahee* had committed a knowing violation because it was aware that it needed to send support payments weekly but instead chose to send them monthly. *Id.* at 203, 209.

¶ 98        In *In re Marriage of Chen*, 354 Ill. App. 3d 1004, 1007, 820 N.E.2d 1136, 1140 (2004), the wife issued a withholding notice to her husband's employer, Auto Mall. The employer's person in charge of payroll knew the money had to be withheld and paid over to the SDU, had received notice that the obligee was not receiving the withholdings, wrote a check to comply with the notice, but lost the check on his desk. *Id.* at 1008-09. When the check was discovered, it was paid immediately. *Id.* at 1009. Despite misplacing the check, the appellate court concluded Auto Mall committed a knowing violation because it "offered no compelling excuse for consistently failing to comply with the statute." *Id.* at 1017-18.

¶ 99        In *Solomon*, the First District agreed with the trial court's determination that the employer's violation was not knowing. *Solomon*, 2015 IL App (1st) 133048, ¶ 32. The employer had accidentally entered that withholdings were to be made bimonthly instead of biweekly. *Id.* ¶ 33. On two occasions, the employer did not make a payment to the SDU when the husband received three paychecks in a month. *Id.* The wife's attorney contacted the employer on one such occasion and the employer corrected the problem within two days. *Id.* The court stated, "Illinois case law makes clear that penalties provided for by section 35 of the Withholding Act should only be imposed on those employers who purposely disregard a court's support order." *Id.* ¶ 35.

¶ 100                                        2. *This Case*

¶ 101        To the extent Buckhart claims *Solomon* requires a heightened standard for a violation, such as an intentional act, we disagree. In 2012, the legislature amended the Act. Pub. Act 97-994, § 5 (eff. Jan. 1, 2010) (amending 750 ILCS 28/35). The initial bill introduced in the house would have changed the mental state from "knowingly" to "willfully." 97th Ill. Gen. Assem., House Bill 5221, 2012 Sess. After debate, a vote on the bill was postponed, and the legislature later amended the bill to retain the "knowingly" standard. See Pub. Act 97-994, § 5 (eff. Jan. 1, 2010) (amending 750 ILCS 28/35). Based on the above, it is clear that the legislature intended to keep the knowing standard in place.

¶ 102        Here, the trial court found that Buckhart received the withholding notice in December 2015 but failed to forward the withheld funds to the SDU because of an honest mistake. However, in February 2016, Buckhart received the nonreceipt notice and was therefore aware that the withheld funds were not being paid to the SDU. Buckhart did not provide any explanation regarding why it did not correct the error.

- 15 -

¶ 103    The facts of this case are much more similar to *Chen*, where the employer offered no explanation for the delay. Unlike *Solomon*, Buckhart did not immediately fix the problem or investigate further. Mortimer testified that he would have fixed the problem had he known, and the trial court found the fix was as simple as selecting an option from a drop-down menu. However, Flatt simply assumed that the withholding was being handled properly. Accordingly, the trial court's finding that Buckhart knowingly failed to pay the withheld amounts to the SDU was not against the manifest weight of the evidence.

¶ 104                                    F. Calculating the Penalty

¶ 105    Sally argues that the trial court erred when it reduced the penalty from $112,000 to $53,400. According to Sally, the penalty provision is unambiguous that "the payor shall pay a penalty of $100 for each day that the amount designated in the income withholding notice" is not paid. 750 ILCS 28/35(a) (West 2014). Sally contends that the penalty should have been assessed starting on January 19, 2016, and for every week thereafter until Buckhart paid the SDU. Sally further argues that Buckhart made a judicial admission that it paid the SDU on May 26, 2016, and the trial court erred when it admitted evidence to the contrary.

¶ 106    Buckhart responds that the trial court correctly determined that a penalty is only allowed when there is a corresponding knowing violation. Buckhart argues that because it proved the violations prior to February 19, 2016, were not committed "knowingly," the court correctly calculated the penalty from that date going forward. Buckhart also contends that the trial court had discretion to allow evidence that the withheld amounts were paid on May 23, 2016.

¶ 107                                    1. *The Applicable Law*

¶ 108    The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Schultz*, 2013 IL 115738, ¶ 12. The best indicator of the legislature's intent is the plain and ordinary meaning of the statute. *Id.* When the language of a statute is clear and unambiguous, it should be applied as written without resort to extrinsic aids of construction. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 47, 983 N.E.2d 993. "Additionally, in determining the legislative intent of a statute, a court may consider not only the language used, but also the reason and necessity for the law, the evils sought to be remedied, and the purposes to be achieved." *Prazen v. Shoop*, 2013 IL 115035, ¶ 21, 998 N.E.2d 1. Courts should construe words and phrases in light of other relevant provisions. *In re C.P.*, 2018 IL App (4th) 180310, ¶ 18, 115 N.E.3d 1056. Statutory interpretation is a question of law reviewed *de novo*. *Schultz*, 2013 IL 115738, ¶ 12.

¶ 109    Section 35(a) of the Act states, in pertinent part, as follows:

> "If the payor knowingly fails to withhold the amount designated in the income withholding notice or to pay any amount withheld to the State Disbursement Unit within 7 business days after the date the amount would have been paid or credited to the obligor, then the payor shall pay a penalty of $100 for each day that the amount designated in the income withholding notice (whether or not withheld by the payor) is not paid to the State Disbursement Unit after the period of 7 business days has expired. *** A finding of a payor's nonperformance within the time required under this Act must be documented by a certified mail return receipt or a sheriff's or private process server's proof of service showing the date the income withholding notice was served on the payor. For purposes of this Act, a withheld amount shall be considered paid by a

payor on the date it is mailed by the payor, or *** on the date delivery of the amount has been initiated by the payor." 750 ILCS 28/35(a) (West 2014).

¶ 110       The $100 per day penalty is assessed for each violation of the Act, and "[a] separate violation occurs each time an employer knowingly fails to remit an amount that it has withheld from an employee's paycheck." (Internal quotation marks omitted.) *In re Marriage of Miller*, 227 Ill. 2d 185, 194, 879 N.E.2d 292, 298 (2007). "The $100-per-day penalty provision was enacted to ensure a speedy and simple method of withholding wages in response to the nationwide crisis of delinquent child support." *Chen*, 354 Ill. App. 3d at 1015. "The purpose of allowing a plaintiff to recover the $100-per-day penalty for each day of a knowing violation is to punish parties that violated the Act and to discourage future violations." *Schmidgall*, 2018 IL App (3d) 170189, ¶ 56. "The fact that the penalty assessment may result in a 'windfall' to the recipient is irrelevant because the penalty is not solely related to the hardship suffered by the recipient." *Grams v. Autozone, Inc.*, 319 Ill. App. 3d 567, 571, 745 N.E.2d 687, 691 (2001). Nonetheless, because section 35(a) is penal in nature and creates a new liability on the part of payors, the Act is strictly construed in favor of the persons sought to be subjected to its operation. *Schmidgall*, 2018 IL App (3d) 170189, ¶ 56 (citing *Schultz*, 2013 IL 115738, ¶ 12).

¶ 111                                    2. *The Start Date*

¶ 112       The penalty provision in section 35(a) of the Act is subject to more than one interpretation. Sally contends that the penalty provision contains two separate components. The first clause of the penalty provision describes when a payor is liable (if it knowingly fails to withhold or pay), and the second clause calculates the amount of the penalty ($100 for each day the amount in the notice is not paid). Because the legislature specifically referred to "the amount in the withholding notice," the statute can be read to mandate a penalty for each missed payment as long as any one violation was committed knowingly.

¶ 113       However, the penalty provision can also easily be read as requiring a penalty only for each knowing violation. Buckhart points out that had it fixed the problem when it received the nonreceipt notice, it would not have been subject to a penalty for the January and February missed payments because they were the product of an honest mistake. Buckhart claims it would be absurd to penalize it for those unknowing violations just because it later committed a knowing violation.

¶ 114       Because we conclude the statute is ambiguous, we likewise conclude that it should be strictly construed in Buckhart's favor. Accordingly, we hold that the $100 per day penalty applies only to knowing violations. This conclusion is consistent with what this court wrote in *Dunahee*—namely, the legislature intended the penalty to be applied where an employer knowingly failed to make a timely payment. *Dunahee*, 273 Ill. App. 3d at 208. An employer who innocently or negligently failed to make a payment would not be subject to the penalty. *Id.*

¶ 115       We earlier noted that the legislature amended the Act in 2012, and we conclude it did so because it intended to punish only those employers who knowingly failed to comply with the Act. The 2012 amendment provides additional support for our conclusion that the penalty in section 35(a) applies only to knowing violations. For the reasons stated, we conclude the trial court did not err by reducing Buckhart's penalty to reflect only those violations that occurred knowingly.

¶ 116                                    3. *The Stop Date*

¶ 117      Finally, Sally argues that the trial court erred by admitting evidence on the issue of when the Buckhart paid over the withheld funds to the SDU. Sally explains that, in response to a request to admit, Buckhart agreed that "payments were not made over to [the SDU] for the benefit of this Plaintiff until a date on or about May 26, 2016." Sally asserts Buckhart's response constituted a judicial admission and had the effect of removing the issue from contention. Buckhart claims its response to the requests to admit were admitted into evidence by the court as part of a stipulation and therefore the court had the discretion to reject the stipulation if it was in fact untrue, citing *Ellis v. American Family Mutual Insurance Co.*, 322 Ill. App. 3d 1006, 1010, 750 N.E.2d 1287, 1290 (2001).

¶ 118      "Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468, 914 N.E.2d 1258, 1267 (2009). Judicial admissions have the effect of withdrawing a fact from issue and cannot be contradicted at trial. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 89, 59 N.E.3d 41. As a result, "[t]he doctrine of judicial admissions requires thoughtful study for its application so that justice not be done on the strength of a chance statement made by a nervous party." (Internal quotation marks omitted.) *Pavlovich*, 394 Ill. App. 3d at 468. Judicial admissions cannot be "matter[s] of opinion, estimate, appearance, inference, or uncertain summary." *Id.* Whether a statement is a judicial admission must be determined under the circumstances of each case, and each statement must be given meaning consistent with the context in which it was found. *Id.* A trial court's treatment of a judicial admission is reviewed for an abuse of discretion and will be reversed only if no reasonable person would take the view adopted by the trial court. *Id.*; see also *Peach v. McGovern*, 2019 IL 123156, ¶ 25 ("An abuse of discretion occurs only where no reasonable person would take the position adopted by the circuit court.").

¶ 119      At trial, Sally objected to all testimony and evidence she believed constituted a judicial admission. In particular, Sally objected when Flatt was asked when he received the withholding notice and the nonreceipt notice. The trial court overruled the objection without argument or explanation. At the close of evidence, Sally offered Buckhart's responses to her requests to admit into evidence. Buckhart objected, arguing the requests' use of the phrase "on or about" made them vague. Buckhart believed the testimony should stand because it clarified the requests to admit and demonstrated when Buckhart made the payments to the SDU. The trial court admitted Buckhart's responses into evidence over objection. However, the court also admitted Buckhart's exhibits that showed when the checks were issued. Ultimately, the court concluded Little's testimony was credible and found that the payments were forwarded to the SDU on May 23, 2016.

¶ 120      We conclude the trial court did not abuse its discretion. Buckhart's response to Sally's request to admit used the phrase "on or about," which is imprecise. The trial court could have reasonably concluded that the testimony that the payment was made on May 23 was consistent with the admission that Buckhart paid the SDU "on or about" May 26. Additionally, section 35(a) states, "For purposes of this Act, a withheld amount shall be considered paid by a payor on the date it is mailed by the payor ***." 750 ILCS 28/35(a) (West 2014). Given the context that the Act designates when withheld amounts are considered paid and the parties consistently disputed the amount of the penalty, it was well within the trial court's discretion to accept testimony on the precise date Buckhart paid the SDU.

¶ 121 In concluding, we commend the trial court for its detailed written orders. We found them particularly helpful to understanding the parties' arguments and the trial court's findings.

¶ 122 III. CONCLUSION

¶ 123 For the reasons stated, we affirm the trial court's judgment.

¶ 124 Affirmed.