NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250688-U

NO. 4-25-0688

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 3, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Henry County |
|       Petitioner-Appellee, | ) | No. 21JA24 |
|       v. | ) | |
| Bobbie L., | ) | Honorable |
|       Respondent-Appellant). | ) | James J. Cosby, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, holding that (1) the trial court's determination that respondent was unfit was not against the manifest weight of the evidence, (2) the court's determination that termination of respondent's parental rights was in the minor's best interest was not against the manifest weight of the evidence, (3) respondent failed to establish that her due process rights were violated, and (4) respondent failed to establish that her counsel provided ineffective assistance by failing to object to or attempt to appeal from certain permanency orders.

¶ 2     Respondent, Bobbie L., appeals the trial court's order terminating her parental rights to her son, A.L. (born in July 2017). Respondent argues that (1) the trial court's finding that she was unfit was against the manifest weight of the evidence, (2) the court's finding that termination of her parental rights was in A.L.'s best interest was against the manifest weight of the evidence, (3) her right to due process was violated, and (4) her counsel was ineffective for failing to object to or attempt to appeal from several permanency orders. We affirm.

¶ 3                        I. BACKGROUND

¶ 4        On July 22, 2021, the State filed a petition for adjudication of wardship concerning A.L. The petition alleged that A.L. was neglected in that he was in an environment injurious to his welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)) because (1) respondent allowed her paramour to continue to have contact with A.L. knowing that he was striking A.L. and, as a result, A.L. sustained injuries, thereby placing A.L. at risk of harm, and (2) A.L.'s father failed to visit him, be a part of his life, and/or protect or ensure his health and safety and, as a result, A.L. sustained injuries while in the care or custody of respondent, thereby placing A.L. at risk of harm. The petition also alleged that A.L. was abused pursuant to section 2-3(2)(v) of the Juvenile Court Act (*id.* § 2-3(2)(v)) in that respondent's paramour inflicted excessive corporal punishment, which resulted in bruises, welts, and/or redness on various parts of his body.

¶ 5        On July 23, 2021, the trial court entered an order finding that probable cause existed for the filing of the petition. The court granted temporary custody and guardianship to the Illinois Department of Children and Family Services (DCFS).

¶ 6        On August 11, 2021, the trial court entered an adjudicatory order finding that A.L. had been neglected and abused. On December 8, 2021, the court entered a dispositional order finding that respondent was unfit to care for, protect, train, educate, supervise or discipline A.L. and that placement with her was contrary to A.L.'s health, safety, and best interest. The court ordered that A.L. be made a ward of the court, and it granted custody and guardianship to DCFS.

¶ 7        On May 12, 2022, the trial court entered a permanency order establishing a permanency goal of "[r]eturn home," finding respondent had failed to make reasonable efforts or progress toward A.L.'s return. On November 14, 2022, February 8, 2023, and August 9, 2023, the court entered permanency orders setting permanency goals of return home within 12 months,

finding reasonable efforts and progress on behalf of respondent, and finding reasonable efforts on behalf of the agency. On November 9, 2023, the court entered a permanency order establishing a permanency goal of return home within five months, finding respondent had made reasonable efforts and progress, and finding the agency had made reasonable efforts.

¶ 8        On March 13, 2024, the trial court entered a permanency order establishing a permanency goal of return home within 12 months. The court found respondent had made reasonable efforts toward A.L.'s return but not reasonable progress and the agency had made reasonable efforts. On September 11, 2024, the court entered a permanency order changing the permanency goal to substitute care pending a determination on the termination of respondent's parental rights, stating A.L. needed permanency and too much time had passed without progress. The court found respondent had made reasonable efforts but not reasonable progress and the agency had made reasonable efforts.

¶ 9        On April 8, 2025, the State filed a motion to terminate respondent's parental rights. The motion alleged that respondent was unfit pursuant to section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)) in that she (1) failed to maintain a reasonable degree of interest, concern, or responsibility for A.L.'s welfare (*id.* § 1(D)(b)); (2) failed to make reasonable efforts to correct the conditions that were the basis of A.L.'s removal during the nine-motion period from August 11, 2021, to May 11, 2022 (*id.* § 1(D)(m)(i)); and (3) failed to make reasonable progress toward A.L.'s return during the nine-month period from November 9, 2023, to August 9, 2024 (*id.* § 1(D)(m)(ii)).

¶ 10        On May 7, 2025, a hearing was held on the issue of unfitness. Taylor May testified that she worked for Bethany for Children and Families and she had been assigned to A.L.'s case since November 2021. She stated the case was initiated due to concerns about

excessive corporal punishment respondent's paramour was inflicting on A.L. While investigating these allegations, the agency received reports that respondent was using methamphetamine, and she tested positive for methamphetamine during the investigation.

¶ 11  May testified that respondent's goals for the case were completing a parenting course, completing a mental health course, participating in individual counseling, participating in family counseling, and completing a substance abuse evaluation. There were also "income and housing goals." According to May, respondent completed a parenting evaluation in August 2023. She completed a mental health evaluation in November 2021, and it was recommended that she participate in counseling, which she did. She was successfully discharged from counseling in November 2022.

¶ 12  May testified that respondent completed three substance abuse evaluations. She completed the first evaluation in 2021, and it was recommended that she undergo inpatient treatment. Following the first evaluation, respondent was unsuccessfully discharged from inpatient treatment. She completed a second substance abuse evaluation in 2022, inpatient treatment was again recommended, and she was successfully discharged. She had a third evaluation in 2023 "due to relapses" and issues completing random drug tests. Starting in February 2023, respondent stopped completing drug tests consistently. The last drug test she completed was in June 2024, and she tested negative for all substances. However, she had been requested to complete several tests in July and August 2024, which she failed to do. During the period between November 9, 2023, and August 9, 2024, respondent missed four drug tests. In February 2024, respondent completed an oral toxicology screen and tested positive for methamphetamine. However, she tested negative the next day.

¶ 13  May testified that respondent regularly provided proof of income throughout the

majority of the case. She had adequate housing and lived with her current paramour (the record indicated that respondent's paramour at the time of the unfitness hearing was not the individual who allegedly abused A.L. prior to the commencement of the case).

¶ 14    May testified that, at the start of 2024, respondent had unsupervised visitation for two hours at a time three to four days per week. The agency began having safety concerns with the visits, so they started having a worker "pop in" and partially supervise the visits. A.L. had reported that respondent's paramour was primarily the one playing with him and cooking for him during the visits. When the agency advised respondent of its concerns about her lack of participation, she reengaged in visits. There were also safety concerns related to an incident when A.L. was on a motorcycle and an incident where he was in a vehicle by himself and tried to start the vehicle. May testified that respondent eventually became noncompliant with drug testing and the visits then became fully supervised. After a period of noncompliance with drug testing, visits were reduced to one supervised visit per week.

¶ 15    The trial court found the State had proved respondent unfit as to all three grounds alleged in the motion for termination of parental rights.

¶ 16    On June 10, 2025, a best-interest report prepared by May was filed. The report stated A.L. had been residing with his paternal grandparents for three years and five months and they were willing to adopt him. The report indicated that A.L.'s basic health, safety, educational, and well-being needs had been consistently met by his grandparents and he was bonded to them. A.L. was close to his sister, who also resided with his grandparents. A.L. was content, well-adjusted, and displayed love toward his grandparents. The report stated A.L. had not had a consistent relationship with respondent since September 2024. The report stated that termination of respondent's parental rights was in A.L.'s best interest.

¶ 17        On June 11, 2025, a best-interest hearing was held. The trial court indicated it would be considering the best-interest report that had been filed the day before. May testified that A.L. had been placed with his paternal grandmother. She provided him with physical safety, shelter, food, healthcare, and appropriate clothing. A.L. felt loved and valued in her home. A.L. had lived there since he was four years old, and his grandmother was willing to adopt him.

¶ 18        The trial court stated it had considered the best-interest report and May's testimony. The court noted that the case had been open for three and a half years, during which A.L. lived with his grandmother. The court stated the case had been open so long because respondent had been compliant with services for a period of time and had been making progress, but she had not made sufficient progress to close the case. The court found that A.L.'s paternal grandparents' home had become his home, and he had bonded with his grandparents and sister. The court stated that after three and a half years, A.L. needed permanency, which his grandparents could provide but respondent could not. The court found it was in A.L.'s best interest to terminate respondent's parental rights.

¶ 19        This appeal followed.

¶ 20                                   II. ANALYSIS

¶ 21        On appeal, respondent argues that (1) the trial court's finding that she was unfit was against the manifest weight of the evidence, (2) the court's finding that termination of parental rights was in A.L.'s best interest was against the manifest weight of the evidence, (3) her right to due process was violated, and (4) her counsel was ineffective for failing to object to or attempt to appeal several permanency orders.

¶ 22                                  A. Unfitness

¶ 23        Respondent argues that the trial court's finding that she was unfit as to all three

grounds alleged in the motion for termination of parental rights was against the manifest weight of the evidence. We address only respondent's argument that the court erred by finding that she was unfit in that she failed to make reasonable progress toward A.L.'s return during the nine-month period from November 9, 2023, through August 9, 2024, as we find this ground to be dispositive. Specifically, respondent argues the court erred by finding she failed to make reasonable progress due to evidence that she relapsed into substance use and skipped drug tests. She argues she gave explanations for most of the missed tests and had a negative drug test the day after her only positive test.

¶ 24        The involuntary termination of parental rights involves a two-step process and is governed by the Juvenile Court Act and the Adoption Act. *In re D.T.*, 212 Ill. 2d 347, 352 (2004). First, the State must prove by clear and convincing evidence that the parent is "unfit" as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re C.W.*, 199 Ill. 2d 198, 210 (2002); see 705 ILCS 405/2-29(2) (West 2024). If the trial court finds the parent unfit, it then considers whether termination of parental rights is in the child's best interest. *C.W.*, 199 Ill. 2d at 210; see 705 ILCS 405/2-29(2) (West 2024).

¶ 25        Section 1(D) sets forth several grounds upon which a parent may be deemed unfit. Relevant to this appeal, section 1(D)(m)(ii) of the Adoption Act (750 ILCS 5/1(D)(m)(ii)) provides that one ground for unfitness is "[f]ailure by a parent *** to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor."

¶ 26        "[R]easonable progress is judged by an objective standard based upon the amount of progress measured from the conditions existing at the time custody was taken from the parent." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006). Our supreme court has held:

"[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

"Reasonable progress exists when the trial court can conclude that, in the near future, it will be able to order the child[ ] returned to parental custody." *In re Dar. H.*, 2023 IL App (4th) 230509, ¶ 53.

¶ 27    We will not disturb a trial court's determination that parental unfitness has been established by clear and convincing evidence unless that determination is contrary to the manifest weight of the evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). "A court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." *Id.*

¶ 28    Here, we find the trial court's determination that respondent was unfit based on her failure to make reasonable progress toward A.L.'s return during the nine-month period from November 9, 2023, through August 9, 2024, was not against the manifest weight of the evidence. The evidence at the unfitness hearing showed that, while initially investigating the allegations of abuse and neglect based on excessive corporal punishment, caseworkers became concerned about respondent's substance abuse issues. Accordingly, respondent was directed to complete substance abuse services and random drug tests. During the period between November 9, 2023, and August 9, 2024, respondent missed four drug tests and tested positive for methamphetamine

on an oral toxicology screen on one occasion. In January 2024, respondent had unsupervised visitation with A.L. three or four times per week. However, due to safety concerns during the visits and her missed drug tests, her visitation was reduced to one supervised visit per week by the end of the nine-month period. Thus, respondent was further away from having A.L. returned to her at the end of the nine-month period than at the beginning of the period, and the trial court did not err by finding she failed to make reasonable progress during this time.

¶ 29    While respondent contends that she gave explanations for most of the missed tests, the portion of the report of proceedings she cites in support of this assertion does not discuss any reasons given for the missed tests. Moreover, even if respondent did give reasons for missing the tests, reasonable progress is an objective standard. See *Daphnie E.*, 368 Ill. App. 3d at 1067. As discussed, the missed tests led to her visitation being reduced to one supervised visit per week and resulted in her being further from having A.L. returned to her care than at the start of the nine-month period.

¶ 30    Because we have found that the State proved one ground of unfitness alleged in the motion for termination of parental rights, we need not consider whether it proved the other grounds. See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891 (2004) ("When parental rights are terminated based upon clear and convincing evidence of a single ground of unfitness, the reviewing court need not consider additional grounds for unfitness cited by the trial court."); *Gwynne P.*, 215 Ill. 2d at 349 ("A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence.").

¶ 31                                B. Best Interest

¶ 32    Respondent argues that the trial court's finding that termination of her parental rights was in A.L.'s best interest was against the manifest weight of the evidence. Respondent

contends that A.L. was doing well in the care of his foster family because the State had kept him there for years, "even though there would have been opportunities to return the child." Respondent also contends that she had "done well in some of her interactions with [the] child."

¶ 33           "At the best-interest portion of a termination hearing, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 31. At this stage, the focus shifts from the parent to the child, and "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. "The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *Id.*

¶ 34           Section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)) provides that, when a best-interest determination is required, the trial court must consider several enumerated factors in the context of the child's age and developmental needs. These factors include (1) the physical safety and welfare of the child, (2) the development of the child's identity, (3) the child's background and ties, (4) the child's sense of attachments, (5) the child's wishes and long-term goals, (6) the child's community ties, (7) the child's need for permanence, (8) the uniqueness of every family and child, (9) the risks attendant to entering and being in substitute care, and (10) the preferences of the persons available to care for the child. *Id.*

¶ 35           We will reverse a trial court's best-interest determination only if it is against the manifest weight of the evidence. *J.B.*, 2019 IL App (4th) 190537, ¶ 33.

¶ 36           Here, the trial court's determination that termination of respondent's parental rights was in A.L.'s best interest was not against the manifest weight of the evidence. The evidence at the best-interest hearing showed that A.L. had lived with his foster family (his

paternal grandparents) since the case was opened approximately three and a half years earlier. He was bonded with his grandparents and sister, who also lived with his grandparents. A.L.'s foster parents provided for all of his physical needs, and they were willing to adopt him. While respondent contends that she had some positive interactions with A.L., the best-interest report stated A.L. had not had a consistent relationship with respondent for approximately 10 months.

¶ 37                          C. Due Process Claims

¶ 38          Respondent argues that "[t]he termination of [her] parental rights was unconstitutional," as it was in violation of her right to due process under the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). Specifically, respondent argues that (1) the trial court's "decision to completely sever any legal relationship" she had to A.L. rather than placing A.L. under the guardianship of his grandmother was not "narrowly tailored to the goal of protecting the child's welfare" and (2) the State violated her due process rights because its allegation that she was unfit due to her failure to make reasonable efforts during the period between August 11, 2021, and May 11, 2022, was untimely. We need not address respondent's second argument as we have already determined the court properly found she failed to make reasonable progress. As explained, this ground alone was sufficient to support the court's finding of unfitness. See *supra* ¶ 30. Therefore, we only address respondent's first argument related to the court's failure to place A.L. under guardianship.

¶ 39          Respondent argues that the trial court violated her right to due process where it terminated her parental rights rather than placing A.L. under the guardianship of his grandmother pursuant to article XI of the Probate Act of 1975 (755 ILCS 5/art. XI (West 2024)). She argues that "as applied to her, the Juvenile Court Act is not narrowly tailored" such that it "survive[s] strict scrutiny" because guardianship would have been "just as effective" at protecting A.L. and

- 11 -

would have "better respect[ed her] fundamental liberty interest in parenting her child by allowing her the hope of reuniting with the child."

¶ 40    Respondent acknowledges that she forfeited this argument by failing to raise it in the trial court. However, she argues that we should overlook her forfeiture of this argument to avoid the unjust result that her parental rights were terminated when a "less destructive alternative" was available. She also argues that the issue is reviewable under both prongs of the plain error doctrine and her counsel provided ineffective assistance by failing to "suggest that a guardianship or less destructive process was appropriate."

¶ 41    "Because termination of parental rights affects a fundamental liberty interest, a court of review may consider whether a forfeited issue constituted plain error." *In re J.C.*, 2024 IL App (4th) 240747, ¶ 30. Under the plain error doctrine, a reviewing court may consider unpreserved error where a clear or obvious error occurred and (1) the evidence is closely balanced or (2) the error is so serious that it affected the fairness of the trial or challenged the integrity of the judicial system. *In re D.D.*, 2022 IL App (4th) 220257, ¶ 31. "Plain-error review is reserved for errors that are clear or obvious based on law that is well settled at the time of trial." (Internal quotation marks omitted.) *People v. Williams*, 2015 IL App (2d) 130585, ¶ 11.

¶ 42    "The analysis courts use when confronted with a claim that a statute violates the due process guarantees of the United States and Illinois Constitutions depends on the nature of the right upon which the statute supposedly infringes." *In re R.C.*, 195 Ill. 2d 291, 302 (2001). "[S]trict scrutiny analysis applies to statutes *** that are employed as part of a procedure to *terminate* parental rights and dissolve the bonds between parent and child." (Emphasis in original.) *In re D.W.*, 214 Ill. 2d 289, 311 (2005). "To survive strict scrutiny the means employed by the legislature must be 'necessary' to a 'compelling' state interest, and the statute must be

- 12 -

narrowly tailored thereto, *i.e.*, the legislature must use the least restrictive means consistent with the attainment of its goal." *R.C.*, 195 Ill. 2d at 303. Respondent does not dispute that protection of children is a compelling state interest. See *D.W.*, 214 Ill. 2d at 311.

¶ 43 "[A]n as-applied challenge [to a statute] requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party." *People v. Harris*, 2018 IL 121932, ¶ 38. Accordingly, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks omitted.) *Id.* ¶ 39. "Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature." *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004).

¶ 44 We decline to address the merits of respondent's due process argument related to the trial court's failure to order that A.L. be placed under guardianship for several reasons. First, we find the argument to be unclear and underdeveloped. See *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 82 ("Appellate courts are not depositories where litigants may dump the burden of argument and research; they are entitled to have the issues clearly defined and a cohesive legal argument presented."). While respondent frames her argument as a due process challenge to a statute and argues that strict scrutiny applies, it is unclear which statute she is challenging. At one point in her brief, she broadly asserts that the Juvenile Court Act is not narrowly tailored as applied to her, but she does not specify which section or sections of the Juvenile Court Act she finds objectionable. She asserts in another portion in her brief that "the decision to completely sever any legal relationship [between her and A.L.] was not narrowly tailored to the goal of protecting the child's welfare." However, strict scrutiny analysis is only applicable to questions concerning the constitutionality of statutes, and her argument that the

- 13 -

court's termination decision is subject to a strict scrutiny analysis is misplaced.

¶ 45　　　　Moreover, even assuming respondent had presented a proper strict scrutiny argument, the trial record is not sufficiently developed to address her as-applied due process challenge. While she argues that "[t]here is nothing in the record to suggest that a guardianship would not have been just as effective in protecting [A.L.]," the record was not developed to address this question because the issue of whether guardianship would be appropriate for A.L. was not raised. There was no testimony from A.L.'s caseworker or any other evidence concerning the availability or propriety of guardianship as an alternative to termination of parental rights in this case.

¶ 46　　　　Also, because respondent failed to raise this claim in the trial court or adequately develop her argument on appeal, it is unclear at what juncture of the proceedings respondent is arguing that guardianship should have been considered or ordered by the court and what legal basis there would have been for doing so. Notably, when the permanency goal was changed to substitute care pending a determination on the termination of respondent's parental rights on September 11, 2024, section 2-28(2) of the Juvenile Court Act (705 ILCS 405/2-28(2) (West 2024)) provided that guardianship could only be set as a permanency goal if adoption had been deemed inappropriate and adoption could only be set as a permanency goal if parental rights had been terminated. Respondent does not address in her brief that this version of the statute precluded the trial court from considering guardianship as a permanency goal before it had ruled out adoption. Notably, the First District has considered and rejected a due process challenge to this version of section 2-28, finding the statute's preference for adoption over guardianship survived strict scrutiny analysis. See *In re Julieanna M.*, 2018 IL App (1st) 172972, ¶¶ 13-25.

¶ 47　　　　While this case was pending in the trial court, section 2-28 of the Juvenile Court

Act was amended effective February 5, 2025, such that courts are now to consider both guardianship and substitute care pending a determination on the termination of parental rights as permanency goals where return-home goals are deemed inappropriate and not in the minor's best interest. See 705 ILCS 405/2-28(2.3) (West Supp. 2025). However, in her brief, respondent does not mention this statutory amendment and fails to argue how, if at all, the amended statute applied to her case. Accordingly, we find respondent has forfeited any argument that the trial court erred by not considering guardianship as a permanency goal pursuant to the amended statute. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 48    Thus, we conclude that the record is not sufficiently developed to address respondent's as-applied due process claim and find our ability to address the claim is impeded by the underdeveloped nature of the argument on appeal. See *Hundley*, 2019 IL App (4th) 180380, ¶ 82. To the extent that plain error analysis applies, we find respondent has failed to establish that a clear or obvious error occurred due to the foregoing deficiencies in her argument and in the development of the record. See *People v. Johnson*, 2024 IL 130191, ¶ 44 ("The first step in the plain error analysis is to determine whether a clear or obvious error occurred.").

¶ 49    Respondent also argues that her attorney provided ineffective assistance by failing to raise her as-applied due process challenge in the trial court. Respondent argues that "[i]t was clear that some sort of guardianship proceeding could have been available and viable." She further argues that she was prejudiced because if guardianship had been proposed, the court would have proceeded solely with guardianship.

¶ 50    Under section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2024)), minors and their parents have the right to be represented by counsel in juvenile

proceedings. Our supreme court has held that the statutory right to counsel in juvenile proceedings, like the constitutional right to counsel in criminal proceedings, "impl[ies] a right to effective assistance." *In re Br. M.*, 2021 IL 125969, ¶ 42. Our supreme court has further held that the standard for evaluating ineffective assistance of counsel claims in criminal cases set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), "offers a helpful structure to guide our analysis" in proceedings under the Juvenile Court Act. *Br. M.*, 2021 IL 125969, ¶ 43.

¶ 51 Under this standard, "a parent must show that (1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the parent." *In re M.D.*, 2022 IL App (4th) 210288, ¶ 92. "A reviewing court may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance." (Internal quotation marks omitted.) *Id.* ¶ 93. To show prejudice, "the parent must prove a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* ¶ 92.

¶ 52 We find that respondent has failed to establish that she was prejudiced by her counsel's failure to raise her as-applied due process claim in the trial court. As we have discussed, it is unclear from respondent's argument on appeal what statute she is challenging or what legal basis there would have been for the court to order guardianship rather than terminating her parental rights. Also, the record is not sufficiently developed to determine whether a reasonable probability exists that the trial court would have found guardianship to be appropriate in this case. Accordingly, respondent has not established that it is reasonably probable that the court would have proceeded with guardianship rather than termination of parental rights if counsel had presented this argument in the trial court.

¶ 53 D. Ineffective Assistance of Counsel

¶ 54    Respondent argues that her counsel was ineffective for failing to object to several permanency orders. Specifically, respondent argues that at permanency hearings on November 9, 2022, and February 8, 2023, her counsel should have argued that the permanency goal should have been changed to return home within 5 months rather than return home within 12 months. She contends that she was prejudiced because changing the permanency goal "would have provided her with more resources that would have allowed her and the minor to make the progress they needed to return home properly and never get to a termination stage."

¶ 55    Respondent also argues that counsel was ineffective for failing to argue that the trial court should have found unreasonable efforts on behalf of the agency at permanency hearings held August 9, 2023, November 8, 2023, March 13, 2024, and September 11, 2024. Respondent alleged that she was prejudiced by this because, if counsel had so argued, (1) on August 9, 2023, "the court would have directed *** the agency to make further provisions for counseling to seek a better bond," (2) on November 8, 2023, the court would have "direct[ed] DCFS to go a different path with therapy," (3) on March 13, 2024, "the court would have ordered unsupervised visitation to be allowed," and (4) on September 11, 2024, "the court would have ordered a different approach by the agency."

¶ 56    Additionally, respondent argues that her counsel provided ineffective assistance by failing to seek permissive interlocutory review of these allegedly improper permanency orders by filing petitions for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(5) (eff. Oct. 1, 2020). Respondent contends that she was prejudiced by her attorney's failure to appeal these orders because "the Appellate Court would have reversed these permanency orders or entered other orders directing these concerns to be addressed."

¶ 57    To establish a claim of ineffective assistance of counsel, respondent is required to

show that "(1) counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to [her]." *Id.* To show that counsel's allegedly deficient performance prejudiced her, respondent was required to show that there was a reasonable probability that the result of the termination proceeding would have been different. See *id.*

¶ 58　　　　Here, respondent has not demonstrated that a reasonable probability exists that the result of the proceeding would have been different—*i.e.*, her parental rights would not have been terminated—if counsel had raised the aforementioned objections at the permanency review hearings or attempted to appeal the allegedly improper permanency orders. Even if we were to accept respondent's argument that, if counsel had taken these actions, the permanency goal would have been different at various points during the case, additional services would have been available to her at times, unsupervised visitation would have been allowed in March 2024, and the agency would have approached services differently at times, we cannot say without speculating what effect, if any, this would have had on respondent's efforts or progress toward the return of A.L. Thus, we conclude respondent has not shown she was prejudiced by counsel's failure to object to the permanency orders or seek permissive interlocutory review of the orders. See *People v. Palmer*, 162 Ill. 2d 465, 481 (1994) ("Proof of prejudice *** cannot be based on mere conjecture or speculation as to outcome.").

¶ 59　　　　　　　　　　　　　　III. CONCLUSION

¶ 60　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 61　　　　Affirmed.